IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

QUANTAURUS PARKS, #167684                                                           PLAINTIFF

VS.                                                    CIVIL ACTION NO. 3:14cv153-FKB

DERRICK EDWARDS, M.D., ET AL.                                     DEFENDANTS

**MEMORANDUM OPINION AND ORDER**

Before the Court is the Motion for Summary Judgment [38] and a supporting memorandum filed by Defendant Derrick Edwards, M.D., in this action brought pursuant to 42 U.S.C. § 1983. Plaintiff, Quantaurus Parks, has failed to file a response in opposition to the Motion for Summary Judgment. Having considered the filings, the Court finds that the Motion for Summary Judgment [38] should be granted. Accordingly, Plaintiff's claims against Edwards are hereby dismissed with prejudice.

I.  Facts and Procedural History

Parks is a state prisoner housed at East Mississippi Correctional Facility ("EMCF"), located in Meridian, Mississippi. [1]. Defendant Edwards is a physician that was formerly employed by Health Assurance LLC to provide medical services to the inmates incarcerated at EMCF. [31] at 1. According to Parks's complaint, Edwards violated his constitutional rights during his incarceration at EMCF by failing to provide him with adequate medical care for a skin condition. Parks has voluntarily dismissed his claims against Nurse O. Little, Warden Jerry Buscher, and Scott Marquardt, an officer of Management and Training Corporation, a company that manages EMCF. [10], [27].

The Court held an omnibus hearing[1] in this matter, at which time it conferred with

Plaintiff and counsel for defendants in this suit founded upon 42 U.S.C. § 1983, "which creates a cause of action against any person who violates another's constitutional rights while acting under color of state law." *Estate of Thornton v. Rankin Cnty.*, 2015 WL 1650237, *2 (S.D. Miss. Apr. 14, 2015)(Jordan, J.). At the omnibus hearing, the parties consented to have a United States Magistrate Judge conduct any and all further proceedings in the case and order the entry of final judgment, and the District Judge subsequently entered an order of reference. 28 U.S.C. § 636(c); Fed. R. Civ. P. 73. Parks is proceeding in this matter *in forma pauperis* ("IFP") and *pro se*.

In his filings, Parks alleges that he suffered from a skin condition that caused him to experience external hives, intense itching, and burning of his skin. [1], [9]. Parks alleges that Edwards treated him for his skin condition, but the medication Edwards prescribed did not work and, instead, made his condition worsen. [1] at 4. Parks alleges that after he requested to see a specialist, Edwards refused to see him again. *Id.* At the omnibus hearing, Parks testified that although Edwards treated him one time in January 2014, the skin condition had resolved as of August or September 2014. Parks filed this action in February 2014.[2]

## II. Legal Standards

Rule 56 of the Federal Rules of Civil Procedure states, in relevant part, that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue of fact is genuine if the "'evidence is sufficient to permit a reasonable factfinder to return a verdict for the nonmoving party.'" *Lemoine v. New Horizons Ranch and Center*, 174 F.3d 629,

---

[1]*See Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985).

[2] From his complaint, it is unclear whether Parks exhausted his administrative remedies as to his claims. [1] at 6. Nevertheless, because Defendant Edwards has moved for summary judgment on the merits, the Court will address the merits of Parks's claims of denial of adequate medical treatment.

633 (5th Cir. 1999)(quoting *Colston v. Barnhart*, 146 F.3d 282, 284 (5th Cir.), *cert. denied*, 119 S.Ct. 618 (1998)).  Issues of fact are material if "resolution of the issues might affect the outcome of the suit under governing law." *Lemoine*, 174 F.3d at 633.  The Court does not, "however, in the absence of any proof, assume the nonmoving [or opposing] party could or would prove the necessary facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)(en banc)(emphasis omitted).  Moreover, the non-moving party's burden to come forward with "specific facts showing that there is a genuine issue for trial*," Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986), is not satisfied by "conclusory allegations" or by "unsubstantiated assertions," or by only a "scintilla" of evidence.  *Little*, 37 F.3d at 1075.

In order to succeed under § 1983, Parks must establish that Defendant Edwards was deliberately indifferent to his serious medical needs.  *Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir. 1991); *see also Estelle v. Gamble*, 429 U.S. 97, 105 (1976).  Mere dissatisfaction or disagreement with medical treatment does not give rise to a constitutional claim.  *See Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997).  Rather, to establish deliberate indifference, a prisoner must show that the defendants "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 725, 756 (5th Cir. 2001).

III.  Discussion

In his motion for summary judgment, Dr. Edwards argues that the undisputed facts show that he did not act with deliberate indifference to Plaintiff's need for medical treatment.  In support of his motion, Dr. Edwards has submitted over one hundred pages of Plaintiff's medical records that relate to treatment for his skin condition, for the relevant time period. [38-1].  Dr.

˘3˘

Edwards has produced over five hundred pages of medical records to Plaintiff, including those submitted to the Court. [39] at 2; [37]. The medical records submitted to the Court reveal that Parks has been evaluated and treated regularly for the subject skin condition.

Plaintiff first entered the MDOC system on June 2, 2011.[3]  According to the medical records, Parks began complaining about a rash on the back of his neck to prison medical providers in September 2011, while he was incarcerated at Walnut Grove Correctional Facility ("Walnut Grove"). [38-1] at 2.  At this initial medical visit, he also stated that he had been seen by a dermatologist in the "free world." *Id.*  The records submitted by Dr. Edwards show that doctors and nurses at Walnut Grove treated Parks for a rash on his neck and other areas, as well as for periodic itching, burning, and hives, with a variety of medications and soaps twenty-one (21) times between September 2011 and May 2013. [39] at 4-11.  The record also contains notes of two additional visits with a psychiatrist, [38-1] at 18-19, 32-33, as medical personnel opined that the condition could have been related to anxiety. *Id.* at 27, 34.  On January 28, 2013, while still incarcerated at Walnut Grove, Parks was seen by a "free world" dermatologist, who gave him a prescription for ointment to treat psoriasis. *Id.* at 64-65.  Upon his return to Walnut Grove, medical providers filled the prescription and continued to treat Parks's skin condition. *Id.*

By June 2013, Parks had been moved to EMCF.  On June 11, 2013, he was seen by a nurse, after complaining of an ongoing problem with a rash and hives. *Id.* at 74-75.  According to the narrative he provided that day, Parks stated:

> I have been seen for this many times but nobody has found out what is wrong with me.  Everytime I sweat I break out in hives and have burning and itching over my entire body.  It was called "nerves" and I talked to the psychiatrist and too[k] medication.  Nothing changed.  Nothing has changed for the past year.  I have been locked up for 2 years and this started about a year ago.

---

[3] *See* https://www.ms.gov/mdoc/inmate.

*Id.* at 75.  The nurse prescribed 25 mg of Diphenhydramine HCL and directed Parks to take the medication two times per day for two months.  *Id.* at 76. On August 15, 2013, Dr. Carl Faulks at EMCF examined Parks and ordered various blood and urine tests.  *Id.* at 77-82.  At that time, Dr. Faulks noted that he planned to obtain Parks's dermatology consult report from January 2013.  He also diagnosed Parks with psoriasis of the elbows and neck, and a histamine-provoked skin response.  *Id.* at 77.  Dr. Faulks prescribed Cimetidine 400 mg, two tablets by mouth, twice daily, and Diphenhydramine HCL 50 mg, one capsule by mouth, twice daily.  *Id.*  On September 17, 2013, a nurse extended the prescription for his medications.  *Id.* at 83.  On November 7, 2013, Dr. Faulks added new medication orders for Vistaril, both 25 mg and 50 mg to be taken at various times during the day, a Medrol dose pack, and Flonase nasal spray twice per day.  *Id.* at 84-86.

    Dr. Edwards's treatment of Parks began on November 25, 2013, when he authorized a change in Parks's medication.  This change was prompted by Parks's November 21, 2013, medical request, which was followed by a nurse's examination of him on November 25, 2013.  *Id.* at 88.  After the nurse's examination, Dr. Edwards authorized a change of medication to Benadryl 50mg tablets, twice per day.  *Id.* at 89.  Dr. Edwards examined Parks two days later, on November 27, 2013.  *Id.* at 90.  Parks reported to Dr. Edwards that the rash and itching were "ongoing for some time now" and occurred "during different times of the day."  *Id.*  Parks complained that "all previous meds in the past have not worked."  *Id.*  Dr. Edwards commented that he saw no visible lesions and diagnosed "intermittent urticaria with rash."  *Id.*  Dr. Edwards also noted that he would "try [an] alternative histamine blocker" and changed Parks's medication from Cimetidine to Claritin (Loratadine) 10 mg tablets, once per day, for two months.  *Id.*

On December 10, 2013, Parks submitted a Medical Services Request Form in which he complained of "the same problem" of breaking out in hives and that he had not been taken for blood work. *Id.* at 95. A nurse responded on December 11, 2013, that he would be called to the lab and that he was currently taking Benadryl and Vistaril. *Id.* On December 13, 2013, Dr. Edwards ordered blood and urine tests for Parks. *Id.* at 96-97. Dr. Edwards reviewed and electronically signed the test results on December 17, 2013. *Id.* On December 19, 2013, Parks inquired about the lab results in a Medical Services Request Form, which was received by medical services on December 20, 2013. *Id.* at 98. In the response, dated December 24, 2013, the medical office assistant stated that "[u]sually if the labs are fine, there is no reason to call you up to medical." *Id.* On December 30, 2013, Dr. Edwards authorized a continued prescription for Parks of Benadryl 50 mg tablets, twice per day, for five months. *Id.* at 99.

Dr. Edwards presents no further records of his treatment of Parks beyond December 30, 2013. Parks signed the complaint in this action on February 19, 2014, less than two months after Dr. Edwards last treated him. At the omnibus hearing conducted on December 9, 2014, Parks testified that his skin condition had cleared as of August or September 2014. Furthermore, on September 23, 2015, a nurse cleared Parks for duty as a food service worker and noted that he had no open sores or rashes on his hands, arms, face, and neck. *Id.* at 103.

Having reviewed the medical records presented, the Court finds that these records do not support a finding that Dr. Edwards was deliberately indifferent to Parks's serious medical needs or wantonly disregarded his complaints. It appears that Dr. Edwards began treating Parks over two years after Parks initially sought treatment for the skin condition in the prison system. The records bear out that Parks received regular and frequent treatment for approximately two years and eight months prior to filing this lawsuit for a skin disorder that was apparently difficult to

diagnose and treat.  Dr. Edwards treated Plaintiff for, at most, three months near the end of Parks's course of medical treatment, which included treatment by a "free world" doctor. Undoubtedly, Parks believes that his healthcare providers should have been able to identify more precisely the nature and cause of his skin disorder and prescribe more effective treatment. Nevertheless, despite Parks's complaints about the medical care he received, his mere disagreement with the medical treatment he received does not give rise to a constitutional claim.  *Norton*, 122 F.3d at 292.

## IV.  Conclusion

Plaintiff has failed to come forward with any evidence tending to show that Dr. Edwards was deliberately indifferent to his serious medical needs.  For this reason, Dr. Edwards's motion for summary judgment is hereby granted.  Pursuant to Rule 58 of the Federal Rules of Civil Procedure, a separate judgment will be entered.

SO ORDERED, this the 31st day of January, 2017.

     /s/ F. Keith Ball
UNITED STATES MAGISTRATE JUDGE